**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JADA SOEMARNIE THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL NO. 1:25-cv-01411<br><br>(Magistrate Judge Schwab) |

**MEMORANDUM OPINION**

## I. Introduction.

In this social security action, Plaintiff Jada Soemarnie Thomas ("Thomas") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits under Title II of the Social Security Act. We have jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 10-1* to *10-8*.[1] In 2023, Thomas protectively filed[2] an application for disability insurance benefits, alleging that she has been disabled since March 10, 2023. *Doc. 11* at 1; *Admin Tr.* 228–32. After her claim at the initial and reconsideration levels of administrative review were denied, Thomas requested an administrative hearing. *Admin Tr.* at 109–112, 113, 121–123, 124. On April 1, 2025, Thomas—who was represented by counsel—as well as a vocational expert testified at a telephonic hearing before Administrate Law Judge Howard Kaufman (the "ALJ"). *Id.* at 37–59. On April 21, 2025, the ALJ denied Thomas's claim for benefits. *Id.* at 18–31. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On July 29, 2025, Thomas, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See doc. 1*. She requests that the court reverse the Commissioner's decision

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Thomas's claims.

[2] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

and remand the case under the fourth sentence of 42 U.S.C. § 405(g). *Id.* ¶ 2 (Wherefore Clause). She also seeks "such relief" as the court deems proper, including costs and attorney's fees. *Id.*

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7*. The Commissioner filed a certified transcript of the administrative proceedings, which constitutes the entirety of his answer. *See doc. 10*. The parties filed briefs (*see docs. 11, 13–14*) and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Thomas is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[3]

[3] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Thomas met the insured-status requirements through June 30, 2025. *Admin. Tr.* at 20.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision.**

On April 21, 2025, the ALJ denied Thomas's claim for benefits. *Admin. Tr.* at 18–31. He proceeded through the five-step sequential-evaluation process.

**A. Step One.**

At step one of the sequential-evaluation process, the ALJ found that Thomas had not engaged in substantial gainful activity since her alleged onset date of March 10, 2023. *Id.* at 20.

**B. Step Two.**

At step two of the sequential-evaluation process, the ALJ found that Thomas had the following severe impairments: "Tetralogy of Fallot with right ventricle enlargement and pulmonary valve insufficiency; and asthma."[4] *Id.* at 21. The ALJ also found that Thomas had several non-severe medically determinable impairments. *Id.* 21–23.

**C. Step Three.**

At step three of the sequential-evaluation process, the ALJ found that Thomas did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 24–25. Specifically, the ALJ considered Listings 3.03, 4.02, and 4.06, and he determined that Thomas did not meet these listings. *Id.*

[4] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

**D. The RFC.**

The ALJ then determined that Thomas had the RFC to perform sedentary work[5] with some limitations. *Id.* at 25. He concluded that Thomas can "never climb ladders, ropes, or scaffolds;" can "occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl;" and can tolerate "no concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, dusts, gases, odors, poor ventilation, unprotected heights, or moving mechanical parts." *Id.*

In making this RFC assessment, the ALJ considered Thomas's testimony and assertions regarding her limitations. *Id.* at 25–26. The ALJ concluded that although Thomas's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 26. The ALJ also considered Thomas's medical records. *Id.* at 26–27. And he considered the statements submitted by Thomas's mother. *Id.* at 29.

[5] *See* 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

The ALJ further considered the opinions in the record. *Id*. at 27–29. He considered the opinions of the state agency medical consultants and found them partially persuasive. *Id*. at 28. The ALJ also considered—and found partially persuasive—the opinion of James Kimber, DO ("Dr. Kimber"):

> In December 2024, [Dr. Kimber] rated the claimant as New York Heart Association [(]NYHA) Class III and opined that the claimant has a marked limitation of physical activity, is capable of only low stress jobs, would occasionally experience symptoms severe enough to interfere with attention and concentration needed to perform even simple tasks, can stand about two hours total, walk about two hours total, and sit about six hours total in an eight-hour workday, would require one unscheduled 30-minute break daily, can lift and carry up to twenty pounds occasionally, can occasionally twist but never stoop, crouch/squat, balance, bend, or climb, must avoid temperature extremes, may not work at elevation, operate heavy machinery, or work in crawl spaces, and is expected to be absent from work about three days per month.

*Id.* at 28. The ALJ found Dr. Kimber's opinion persuasive to the extent the opinion suggests a sedentary capability of lifting, carrying, sitting, standing, and walking with limited environmental tolerances. *Id.* The ALJ reasoned that such restrictions "are supported by Dr. Kimber's own examination record and more generally with the other evidence of record, particularly objective cardiac testing—EKG/ECG, echocardiogram, cardiac MRI, exercise stress testing, and Holter monitor testing—and examination presentation." *Id.* at 28–29.

The ALJ further found that the portions of Dr. Kimber's opinion suggesting greater limitations were not persuasive:

> These greater limitations are unsupported by Dr. Kimber's own records; contrary to his assertion of NYHA Class III status and debilitating disorders in the opinion statement, his own records repeatedly indicate that the claimant shows no clinical evidence of heart failure on examination and is stable. These greater limitations are also inconsistent with the record as a whole. Other providers repeatedly class the claimant as NYHA Class I or indicate that the claimant has no objective activity restrictions. Despite her chronic symptom reporting, the claimant is notably asymptomatic at rest. Cardiovascular examinations since 2023 are typically within normal limits – rare notation of murmur or mild edema but more typically regular heart rate, regular rhythm, no murmurs, normal pulses, no friction rub or gallop, and no signs of extremity cyanosis, edema, or clubbing. While cardiac testing reveals persistent abnormalities, the claimant's underlying disease appears stable and only moderately severe per EKG/ECG, echocardiogram, cardiac MRI, exercise stress testing, and Holter monitor testing; the record also specifically indicates that the claimant does not meet indications for pulmonary valve intervention at this time. Her treatment remains routine and conservative, consisting only of monitoring and aspirin, and she has not required hospitalization for cardiac issues since the alleged onset date, overall consistent with substantially of less limiting cardiovascular impairments than suggested by Dr. Kimber.

*Id.* at 29. The ALJ concluded that his RFC assessment "is supported by the objective medical evidence of record and the partially persuasive State agency prior administrative medical findings and the medical opinion of Dr. Kimber." *Id.*

**E. Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Thomas was unable to perform any past relevant work. *Id.* at 29. The ALJ

accepted the testimony of the vocational expert that the demands of Thomas's past relevant work exceed the RFC as detailed above. *Id.*

**F. Step Five.**

At step five of the sequential-evaluation process, considering Thomas's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as bonder, final assembler, and table worker—that exist in significant numbers in the national economy that Thomas could perform. *Id.* at 30–31.

In sum, the ALJ concluded that Thomas was not disabled from March 10, 2023, through the date of his decision on April 21, 2025. *Id.* at 31. Thus, he denied Thomas's claim for benefits. *Id.*

## V. Discussion.

Thomas presents a single claim. She argues that the ALJ improperly rejected the more limiting portions of Dr. Kimber's opinion. *Doc. 11* at 9–15. Before addressing the merits of this claim, we set forth the general standards regarding the RFC assessment and the evaluation of opinion evidence.

**A. The RFC.**

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of

one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter*, 642 F.2d at 705.

**B. Opinion Testimony.**

Under the current regulations, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain how he or she "considered the supportability and consistency factors for a medical source's medial opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are defined in 20 C.F.R. §§ 404.1520c(c), 416.920c(c). As the regulations provide, supportability means: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Simply put, supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021*), adopting report and recommendation*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022). On the other hand, consistency means: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The consistency factor focuses on "how well a medical source is supported, or not supported, by the entire record." *Acosta Cuevas*, 2021 WL 363682, at *10.

**C. The ALJ's Evaluation of Dr. Kimber's Opinion.**

With the above standards in mind, we address the ALJ's consideration of Dr. Kimber's opinion. Thomas argues that the ALJ erred by rejecting the more limiting portions of Dr. Kimber's opinion without sufficient rationale. *Doc. 11* at 9–15. Specifically, Thomas claims that the ALJ improperly "cherry-picked" Dr. Kimber's findings when he "rejected the disabling portions of Dr. Kimber's opinion while accepting the portions that comported with a finding of sedentary exertion work." *Id.* at 13.

As noted above, the ALJ must set forth reasons for his or her decision. *Burnett*, 220 F.3d at 119. But the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the "ALJ is merely required 'to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Watters ex rel. L.B. v. Colvin*, No. 3:13-CV-770, 2014 WL 1268566, at *6 (M.D. Pa. Mar. 26, 2014) (quoting *Jones*, 364 F.3d at 505). The ALJ must explain the dispositive reasons for his or her decision. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). And the ALJ's decision must be read as whole. *Jones*, 364 F.3d at 505.

Here, we conclude that the ALJ sufficiently articulated why he found Dr. Kimber's opinion partially persuasive. The ALJ found Dr. Kimber's opinion

persuasive to the extent that the opinion suggested a "sedentary capability by lift, carry, sit, stand, and walk capacity with limited environmental tolerances." *Admin. Tr.* at 28. But the ALJ further found that any greater limitations in the opinion were not persuasive. *Id.* at 29. In support of that finding, the ALJ reasoned that Dr. Kimber's opinion was unsupported by his own records, which "repeatedly indicate that the claimant shows no clinical evidence of heart failure on examination and is stable." *Id.* The ALJ also reasoned that additional limitations were inconsistent with the record as a whole. *Id.* He explained that while Dr. Kimber asserts Thomas has a NYHA Class III status, "other providers repeatedly class the claimant as NYHA Class I or indicate that the claimant has no objective activity restrictions." *Id.* And "despite [Thomas's] chronic symptom reporting," the ALJ acknowledged that Thomas is "notably asymptomatic at rest."[6] *Id.* The ALJ continued to note that Thomas's "[c]ardiovascular examinations since 2023 are typically within normal limits." *Id.* And despite persistent abnormalities revealed during cardiac testing, Thomas's underlying condition appeared "stable and only moderately severe per

---

[6] Thomas argues that the ALJ's acknowledgment that she is asymptomatic at rest ignores the fact that she is symptomatic with increased exertion, "which entirely undermine[s] the rejection of the remaining portions of Dr. Kimber's opinion." *Doc. 11* at 14. But earlier in the decision, the ALJ recognized Thomas's "highly symptomatic presentation with exertion" in relation to the state medical consultants' suggestion of an RFC for light exertion. *Admin. Tr.* at 28. The ALJ found the record as a whole "more consistent with restriction to the sedentary exertional base than the light exertional base suggested by the State agency consultants." *Admin. Tr.* at 28. Accordingly, this argument is without merit.

EKG/ECG, echocardiogram, cardiac MRI, exercise stress testing, and Holter monitor testing." *Id.* The ALJ further noted that the record "specifically indicates that the claimant does not meet indications for pulmonary valve intervention at this time." *Id.* The ALJ concluded that Thomas's treatment "remains routine and conservative, consisting only of monitoring and aspirin, and she has not required hospitalization for cardiac issues since the alleged onset date, overall consistent with substantially [] less limiting cardiovascular impairments than suggested by Dr. Kimber." *Id.*

In sum, the ALJ analyzed Dr. Kimber's opinion by evaluating its supportability and consistency. The ALJ supported his decision to reject the more limiting portions of Dr. Kimber's opinion by citing numerous inconsistencies within Dr. Kimber's own records and the record as a whole. And he made specific references to the parts of the record with which the opinion conflicted. We, therefore, find that the ALJ did not err as to his evaluation of Dr. Kimber's opinion.

To the extent Thomas argues that the evidence supports additional limitations, we cannot reweigh the evidence. *Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh

the evidence or substitute [our own] conclusions for those of the fact-finder.'" (citation omitted)). And "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

**VI. Conclusion.**

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge